[Nos. B189736, B189737. Second Dist., Div. One. Jan. 25, 2007.]

TEMPLE CITY REDEVELOPMENT AGENCY, Plaintiff and Respondent,
v.
BAYSIDE DRIVE LIMITED PARTNERSHIP, Defendant and Appellant.

1556

## COUNSEL

Law Office of Christopher Sutton and Christopher Sutton for Defendant and Appellant.

Hill, Farrer & Burrill and Dean E. Dennis for Plaintiff and Respondent.

OPINION

**VOGEL, Acting P. J.**—Code of Civil Procedure section 1268.610, subdivision (a)(1), provides for an award of litigation expenses to the defendant in an eminent domain action "whenever [t]he proceeding is wholly or partly dismissed *for any reason*."[1] (Italics added.) The question on this appeal is whether "for any reason" means what it says or whether, as the trial court found, it means for any reason except the sequence of events that occurred here—defendant was dismissed not because plaintiff abandoned the proceedings but because defendant sold the property while the action was pending. We find nothing ambiguous about the statute and conclude it must be given its plain meaning. We reverse.

## FACTS

The relevant facts are undisputed. In November 2004, the Temple City Redevelopment Agency filed two eminent domain complaints, one to acquire property owned by Bayside Drive Limited Partnership, the other to obtain property owned by Pi Yun Hou Wang. Because Bayside owned an easement interest in Wang's property, Bayside was named as a defendant in both complaints. In December, the agency deposited $1.25 million as the probable amount of compensation for the Bayside property (plus more for Wang's property). Trial in both cases was set for October 2005.

In June 2005, Bayside's appraiser valued the Bayside property at $2.04 million. Later the same month, Bayside sold its property to Wang for $2 million (which extinguished Bayside's easement over Wang's property).[2] In September, the agency dismissed both the Bayside and the Wang actions (by which time Wang had entered an agreement with the agency to develop the properties under the agency's redevelopment plan and agreed to waive his claim for litigation expenses).

In October, Bayside filed two memoranda of costs (one in each action) claiming about $43,000 for its litigation expenses (including about $35,000 in attorney fees).[3] The agency moved to strike or tax costs. The trial court disallowed about $20,000, then asked for further briefing about the application of section 1268.610, subdivision (a)(1), to the remaining expenses

---

[1] All section references are to the Code of Civil Procedure.

[2] Wang's acquisition of ownership of both the dominant and servient tenements extinguished the easement. (*Leggio v. Haggerty* (1965) 231 Cal.App.2d 873, 883 [42 Cal.Rptr. 400].)

[3] Bayside actively defended the condemnation actions up to the time it sold its property to Wang—by removing the action against it to federal district court, opposing (albeit unsuccessfully) the agency's remand efforts, answering both complaints and filing a cross-complaint in the action against it when the action was remanded to the Los Angeles Superior Court, and obtaining the required appraisal.

($23,116.04). In January 2006, the trial court allowed $592.40 in "ordinary costs" but refused to apply subdivision (a)(1) of section 1268.610 to the remainder ($22,523.64), reasoning as follows: "The intent of [section 1268.610] is to make a defendant whole when the public entity fails to follow through on a condemnation as a result of the public entity's *own conduct.* Formerly, the law contemplated payment of litigation costs when a public entity abandoned the taking. The legislative history from the 1975 amendment reveals that the Legislature intended to include situations such as when the case is dismissed for failure to prosecute—a dismissal caused by the public entity. [¶] Here it was the defendant that caused the dismissal; Bayside mooted the action [by selling] the property to Wang in an open-market transaction. Wang then entered into an agreement with [the agency] which led to the dismissal. Had Bayside not sold the property[,] the condemnation would presumably have proceeded to conclusion. [¶] Applying Section 1268.610 to this case would result in a windfall for Bayside, and result in an unfairness to the public fisk [*sic*]. Attorney's fees are not ordinarily recoverable in a 'direct' taking. The rule Bayside is proposing would allow an owner to reap a windfall of attorney fees simply by selling the property during condemnation, which would result in a dismissal of the owner."

Bayside appeals, limiting its challenge to the $22,523.64 disallowed under section 1268.610, subdivision (a)(1).

## DISCUSSION

### I.

■ Bayside contends section 1268.610 means what it says and that it is entitled to recover its litigation expenses. We agree.

### A.

Section 1268.610 provides: "(a) Subject to subdivisions (b) and (c), *the court shall award the defendant his or her litigation expenses whenever:* [¶] *(1) The proceeding is wholly or partly dismissed for any reason.* [¶] (2) Final judgment in the proceeding is that the plaintiff cannot acquire property it sought to acquire in the proceeding. [¶] (b) Where there is a partial dismissal or a final judgment that the plaintiff cannot acquire a portion of the property originally sought to be acquired, or a dismissal of one or more plaintiffs pursuant to Section 1260.020, the court shall award the defendant only those litigation expenses, or portion thereof, that would not have been incurred had the property sought to be acquired following the dismissal or judgment been the property originally sought to be acquired. [¶] (c) If the plaintiff files a notice of abandonment as to a particular defendant, or a request for dismissal

of a particular defendant, and the court determines that the defendant did not own or have any interest in the property that the plaintiff sought to acquire in the proceeding, the court shall award that defendant only those litigation expenses incurred up to the time of filing the notice of abandonment or request for dismissal. [¶] (d) Litigation expenses under this section shall be claimed in and by a cost bill to be prepared, served, filed, and taxed as in a civil action. If the proceeding is dismissed upon motion of the plaintiff, the cost bill shall be filed within 30 days after notice of entry of judgment." (Italics added.)

"Litigation expenses" in the eminent domain context are defined by section 1235.140: " 'Litigation expenses' includes both of the following: [¶] (a) All expenses reasonably and necessarily incurred in the proceeding in preparing for trial, during trial, and in any subsequent judicial proceedings. [¶] (b) Reasonable attorney's fees, appraisal fees, and fees for the services of other experts where such fees were reasonably and necessarily incurred to protect the defendant's interests in the proceeding in preparing for trial, during trial, and in any subsequent judicial proceedings whether such fees were incurred for services rendered before or after the filing of the complaint."

## B.

In statutory construction cases, our fundamental task is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute. To that end, we begin with the statutory language, giving the words their usual and ordinary meaning. "If the terms of the statute are unambiguous, we presume the lawmakers meant what they said, and the plain meaning of the language governs." (*Estate of Griswold* (2001) 25 Cal.4th 904, 911 [108 Cal.Rptr.2d 165, 24 P.3d 1191].) It is only where there is ambiguity that we look to extrinsic sources, including the ostensible objects to be achieved and the legislative history, to determine the lawmakers' intent. (*Ibid.*; see also *Gray Cary Ware & Freidenrich v. Vigilant Insurance Co.* (2004) 114 Cal.App.4th 1185, 1193–1194 [8 Cal.Rptr.3d 475]; *Unzueta v. Ocean View School Dist.* (1992) 6 Cal.App.4th 1689, 1698 [8 Cal.Rptr.2d 614] [the rule that the literal meaning may be disregarded to avoid absurd results should be used sparingly and only in extreme cases lest we violate the separation of powers doctrine].) We find no ambiguity in a provision that "the court shall award the defendant his or her litigation expenses whenever: [¶] (1) The proceeding is wholly or partly dismissed for any reason." (§ 1268.610, subd. (a)(1).)

First, "for any reason" is not the slightest bit equivocal. (*California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 632–633 [59 Cal.Rptr.2d 671, 927 P.2d 1175] [we have no

power to rewrite a statute to make it conform to a presumed intention that was not expressed]; *Department of Social Services v. Superior Court* (1997) 58 Cal.App.4th 721, 732 [68 Cal.Rptr.2d 239] [the Legislature is presumed to have meant what it said]; *Rossi v. Brown* (1995) 9 Cal.4th 688, 695 [38 Cal.Rptr.2d 363, 889 P.2d 557] [when the words are clear, there is no room for interpretation].)

Second, the litigation expenses recoverable under subdivision (a)(1) of section 1268.610 are those incurred by a "defendant" in a condemnation proceeding, not by the "owner" of the property. (§ 1268.610, subd. (a)(1).) Had the Legislature intended the statute to apply only to owners, it would have referred to ownership as it did in subdivision (c) of the same statute— where the Legislature provided that the dismissal of a defendant who did not own or have any interest in the property is entitled to only those litigation expenses incurred up to the time of a plaintiff's request for dismissal. (§ 1268.610, subd. (c).)

Third, the purpose of the statute is plain—to compensate a defendant who has been put to the task of defending a condemnation action when, for whatever reason, the action is dismissed. That the defendant might fortuitously be able to extricate itself from an expensive condemnation action by selling the property to a willing buyer may or may not mean the defendant has thereby recouped the litigation expenses incurred up to the time of sale. On the record before us, there is no more reason to believe in recoupment than to doubt it, and defendant would in any event be entitled to recover only those expenses incurred up to the time its ownership interest terminated. (§ 1268.610, subd. (c).) There is thus no basis in fact for the trial court's supposition that an award of litigation expenses would result in a "windfall" to Bayside, or for the trial court's further supposition that the application of section 1268.610 in this context "would allow an owner to reap a windfall of attorney fees simply by selling the property during condemnation, which would result in a dismissal of the owner." A sale requires a willing buyer as well as a willing seller, and there is nothing in this record to suggest that Bayside did anything more than break even on its sale to Wang.[4]

■ Fourth, the legislative scheme for the recovery of litigation expenses in eminent domain actions supports our conclusion. Although litigation expenses (except ordinary costs) are generally not awarded in eminent

---

[4] The fact that the agency valued the Bayside property at $1.25 million about six months before Bayside sold it to Wang for $2 million does not by itself establish that Bayside made a profit on the sale. The agency's appraisal could have been way too low. Market conditions could have changed for the better in light of Wang's decision to develop the combined properties in accordance with the redevelopment plan. There is nothing in the record on this issue.

domain cases, they are recoverable when the trial court finds the plaintiff's final offer was unreasonable (§ 1250.410, subd. (b)), when the plaintiff dismisses the action in whole or in part (§ 1268.610, subd. (a)(1)), when the final judgment is that the plaintiff cannot acquire the subject property (§ 1268.610, subd. (a)(2)), and when there is a notice of abandonment as to a particular defendant because that defendant had no ownership interest in the property (§ 1268.610, subd. (c)). There is nothing in any of these sections to suggest the defendant's expenses become unrecoverable by reason of its intervening sale of the subject property.

Fifth, the trial court's concern about the public fisc ignores the fact that the ultimate resolution of this case saved the agency both the cost of further litigation *and* the potential obligation to pay Bayside $2.04 million for its property (the value according to Bayside's appraiser) rather than the agency's opening bid of $1.25 million.[5] As noted above, the potential for abuse in this context seems minimal—that is, we do not see a market developing for the purchase of properties in the midst of pending condemnation proceedings simply to permit the seller to recoup a portion of the fees and costs incurred in defending the property up to the time of the sale—and we therefore refuse to adopt the agency's "don't open the floodgates" argument where there is no chance of a flood.[6]

## II.

Bayside contends it is entitled to costs of appeal, including attorney fees, as litigation expenses. We agree (and note that the agency has essentially conceded the point by failing to address this issue).

A party who prevails on appeal is entitled to recover its costs (Cal. Rules of Court, rules 8.276(c)(2), 3.1702), and those costs include attorney fees where a statute provides for the recovery of fees in the trial court. (*Akins v. Enterprise Rent-A-Car Co.* (2000) 79 Cal.App.4th 1127, 1134 [94 Cal.Rptr.2d 448]; see § 1235.140 [defining "litigation expenses" to include reasonable attorney fees where they were incurred in preparation for trial,

---

[5] Of course, Wang's decision to purchase Bayside's property and use the combined parcels himself in conformance with the redevelopment plan means the agency also did not have to pay Wang for his property, or Bayside for the value of its easement over Wang's property. All things considered, it appears to us that the agency did just fine in this transaction.

[6] We summarily reject the agency's contention that Bayside has no right to its litigation expenses because it did not reserve its right to recover those expenses. No authority is cited to support this assertion and we know of none that would apply—particularly since Bayside refused the agency's request to sign a waiver of its right to recover its litigation expenses.

during trial, "and in any subsequent judicial proceedings"].) Accordingly, Bayside is entitled to recover its fees and costs incurred on appeal.[7]

## DISPOSITION

The orders dated January 6 and January 12, 2006, are reversed; Bayside is awarded its fees and costs incurred on appeal, and the cause is remanded to the trial court with directions to determine (1) whether any part of the remaining $22,523.64 should be taxed, and (2) the amount due to Bayside for its reasonable appellate litigation expenses.

Rothschild, J., and Jackson, J.,[*] concurred.

---

[7] Because the trial court determined that Bayside could not recover its fees at all, it never considered the agency's challenge to the remaining $22,523.64 and thus must do so on remand—at which time it shall also determine the amount of reasonable appellate litigation expenses.

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.